IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 10, 2013

**KELVIN COLLINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 11-01617, 11-01618, 11-01801      Paula Skahan, Judge**

**No. W2013-00321-CCA-R3-PC  - Filed September 30, 2013**

The petitioner, Kelvin Collins, petitioned the Shelby County Criminal Court for post-conviction relief from his 2011 guilty-pleaded convictions of facilitation to commit robbery and aggravated robbery, arising out of two separate incidents.  The convictions resulted in a total effective sentence of eight years to serve in the Department of Correction.  Following an evidentiary hearing, the post-conviction court denied relief, and following our review, we affirm the order of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Kevin P. Henson, Memphis, Tennessee, for the appellant, Kelvin Collins.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Marques Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        The transcript of the petitioner's guilty plea hearing included a statement of the basis for the guilty pleas and convictions:

        Had the [S]tate gone to trial in [docket number] 11-01801
it would have put on proof that on September 18th, 2010,
[Jakeena Nathan] was walking in the area of Millbranch and
Victoria.  She observed a male following her motioning for
other males to come where she was walking.  She said that the

males soon joined her, walked up to her and told her to, "Drop it off," when he produced a .9 mm handgun.

He grabbed the money from her and fled the scene. She knew the co-defendant, Antonio Richardson, from school and through that association [the petitioner] was developed as a suspect and Ms. Nathan positively identified [the petitioner] as the male who pulled a gun on her and snatched her money. Mr. Richardson was with him at the time.

. . . .

In Docket No. 11-01617, had [the] [S]tate gone to trial and put on proof, that on September 9th, 2010, [Mamadou Anne] was parking his car at the Summit Park Apartments when two females approached him telling him that one had been struck by his car. . . . [Mr. Anne] stated that he was not going to give her any money and one of the females said she was going to call her boyfriend. The females – then he told them to call the police.

He stated during the altercation he was approached by several males, one of whom he knew as Cash, . . . and stated that the male known as Cash stated that he was (Indiscernible) boyfriend and should pay for hitting her.

During the altercation [Mr. Anne] was hit and his wallet was taken. [The petitioner] was identified as Cash and was one of the people involved in the altercations involving [Mr. Anne] that resulted in his wallet being taken.

The petitioner stipulated to these facts as presented by the State. The guilty plea hearing transcript evinces that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the defendant. In the colloquy, the trial judge informed the petitioner that, if he had proceeded to trial and been convicted of aggravated robbery, he would have faced a sentence of eight to 30 years with mandatory service of 85 percent of that sentence, and that, for the charge of robbery, he would have faced a sentence of two to 12 years. The petitioner indicated his understanding of the potential sentencing. The petitioner also confirmed that his trial counsel explained the plea agreement to him and that he understood the charges to which he was pleading guilty. The trial court asked the petitioner

whether he was "satisfied with [trial counsel] and everything that he's done for" him, to which the petitioner responded in the affirmative.

Following the entry of the plea, the petitioner filed a timely petition for post-conviction relief,[1] alleging ineffective assistance of counsel which resulted in the entry of a guilty plea that "was not entered willingly or knowingly." On November 2, 2012, the post-conviction court conducted an evidentiary hearing.

In the evidentiary hearing, the petitioner confirmed that, in July 2011, he was facing charges in three separate indictments: robbery, unlawful possession of a controlled substance, and aggravated robbery. The petitioner testified that his trial attorney only met with him two or three times during the pendency of the three cases. The petitioner testified that his trial counsel provided him with all discovery materials received from the State and that, even though the discovery materials were "substantial," he perused all of the discovery documents. When asked about his highest level of education, the petitioner responded that he completed the tenth grade.

The petitioner admitted that his trial attorney had fully discussed the charges pending against the petitioner and the potential sentence that each charge carried. With respect to the aggravated robbery case, the petitioner claimed that he informed his trial attorney that he did not have a weapon on his person at the time he committed the robbery; rather, he claimed that he stole a handgun from the victim during the robbery, and that was the only handgun involved in the crime. In addition, the petitioner testified that he informed trial counsel that another victim, Ms. Nathan's younger cousin, was present during the aggravated robbery offense but that this second victim was not mentioned in any of the State's discovery materials. Despite the petitioner's claim that he was unarmed at the time of the robbery of Ms. Nathan, he testified that he heeded the advice of counsel and pleaded guilty to the offense of aggravated robbery.

The petitioner testified that, following his convictions, he examined the discovery materials more closely and discovered what he believed to be several inconsistencies in Ms. Nathan's statement, such as the number of firearms involved in the aggravated robbery. In addition, the petitioner found it puzzling that Ms. Nathan's cousin had not been interviewed by the police when he was allegedly present when the robbery was committed.

On cross-examination, the petitioner admitted that his trial attorney had

---

[1]The petitioner also filed a writ of error coram nobis contemporaneously with his petition for post-conviction relief. The post-conviction court denied the petition for the writ.

successfully negotiated a reduction of the robbery charge in case 11-01617 to facilitation of robbery and that the State had agreed to dismiss the drug possession charge. The petitioner also acknowledged that the State agreed to the minimum sentence of eight years on the aggravated robbery charge, when the maximum available sentence was 30 years. The petitioner admitted that he stipulated to the facts as read into evidence by the State at the hearing on his guilty plea and that he did not attempt to enter a best interests guilty plea.

The petitioner's trial counsel testified that the State initially offered the petitioner an eight-year sentence in exchange for his plea of guilty to the aggravated robbery charge, to be served concurrently with a three-year sentence for the robbery charge and a one-year sentence for the drug possession charge. Trial counsel testified that he was successful in his bid to have the drug charge dismissed and have the robbery charge reduced to facilitation of robbery with a two-year sentence.

With respect to discovery in the aggravated robbery case, trial counsel testified that the petitioner informed him that Ms. Nathan intended to "change her story" to say that the petitioner did not, in fact, rob her. When trial counsel contacted Ms. Nathan, she "essentially said that [the petitioner] robbed her and that was the extent of it." Trial counsel admitted that the petitioner maintained that he was not armed when he robbed Ms. Nathan and that the petitioner never wavered from this position. Trial counsel stated that he and the petitioner had discussed the inconsistencies in Ms. Nathan's statement. Trial counsel admitted that he did not attempt to contact Ms. Nathan's cousin because "he wasn't the victim in the indictment."

When questioned about the plea agreement, trial counsel testified that it "was the only offer [the petitioner] was going to get, according to the State." Trial counsel explained that it was a "No Deals" situation and that the State conveyed to him that if the petitioner did not accept the plea agreement, the State would "push for all the indictments to be run consecutive." Trial counsel testified that he relayed this information to the petitioner. In addition, trial counsel explained to the petitioner that he would be forced to serve 85 percent of his sentence for the aggravated robbery conviction. Trial counsel denied that he recommended to the petitioner that he accept the plea agreement, testifying that, in his practice, he does not recommend any course of action and does not make any promises to his clients.

On cross-examination, trial counsel addressed the issue of the inconsistencies in Ms. Nathan's statement by explaining that it was his practice to handle those inconsistencies on cross-examination at trial. Trial counsel testified that the petitioner considered going to trial but that he ultimately chose to plead guilty after trial counsel explained all of the consequences of both going to trial and pleading guilty. Trial counsel

stated that he met with the petitioner on seven or eight occasions and that he reviewed the discovery materials with the petitioner at those meetings.

In the post-conviction court's thorough order denying post-conviction relief, the court affirmatively accredited trial counsel's testimony. Noting the discrepancy between the testimony of the petitioner and that of trial counsel regarding the number of times trial counsel met with the petitioner and whether trial counsel had discussed the weaknesses in the State's case, the post-conviction court stated that "[t]his conflicting testimony hardly constitutes clear and convincing proof that [trial counsel's] representation fell below an objective standard of reasonableness." The court further stated that the petitioner failed to show "that he was prejudiced by his supposed ignorance of the weaknesses in the case," finding as follows:

> Throughout his testimony, it was clear that [p]etitioner's decision to accept the plea bargain was based on the victim's willingness to testify against him, not on the legitimacy of the charge (which he contested from the beginning). Petitioner testified that he planned to go to trial when the victim said she would not testify against him. . . . He then testified that when the victim changed her mind, he decided to take the plea bargain. . . . This testimony, too, falls short of providing clear and convincing proof in support of [p]etitioner's claim.

> It is far from clear that [p]etitioner's decision to plead guilty hung on a more thorough analysis of the case against him; rather, it seems he simply wanted to know whether or not the victim would testify against him. Thus, there is not a reasonable probability that [p]etitioner would have chosen a different course if he had known the victim's statements were inconsistent – he already knew her to be a story-changing liar, so learning of inconsistencies in her statements hardly would have given him a dramatically new view of her strengths as a witness. And because the prosecution took a "no deals" stance with regard to this specific charge, . . . presenting to them weaknesses in their case would not have led to a more favorable plea offer.

The court concluded that the petitioner "failed to prove by clear and convincing evidence that he was denied the right to effective counsel."

Following the entry of this order, the petitioner effected a timely appeal.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to relief via a claim of ineffective assistance of counsel, the defendant must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the defendant fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goud v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the defendant the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d

922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In the present case, the record fully supports the post-conviction court's findings and holdings. The record of the guilty-plea submission hearing and the accredited testimony of the petitioner's trial counsel evince the petitioner's understanding of the proceedings and his willingness to enter into the plea. Moreover, the record demonstrates that trial counsel rendered effective assistance in representing the petitioner.

Accordingly, the order of the criminal court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE